No. 22,534.

RACHEL LILLARD and MOLLIE BLACEMORE, as Executors of the Estate of R. I. McQUIDDY, Deceased, *Appellants*, v. W. W. ANDERSON et al., as THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON, and M. D. DUVAL, *Appellees*.

SYLLABUS BY THE COURT.

CONDEMNATION PROCEEDINGS—*Ownership of Condemnation Money—Arbitration—Estoppel*. The decision in *Lillard v. Johnson County*, 102 Kan. 822, 172 Pac. 518, followed.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed March 6, 1920. Affirmed.

*I. O. Pickering,* and *H. L. Burgess,* both of Olathe, for the appellants.

*C. W. Gorsuch,* county attorney, *F. R. Ogg,* and *C. L. Randall,* both of Olathe, for the appellees.

The opinion of the court was delivered by

WEST, J.: Some years ago Dr. R. I. McQuiddy sued the board of county commissioners of Johnson county for $600, the amount of a warrant issued for the condemnation money arising out of the location of a road through his land. He had conveyed by warranty deed to M. D. Duval, who claimed the amount due. The board notified McQuiddy by letter that it

was holding the warrant, but it was of the opinion that his grantee should receive the money, and, unless he could show to the contrary, it would be turned over to the latter. In response to this Dr. McQuiddy wrote:

"After due deliberation I have concluded to submit the question of ownership of the $600. . . . After a fair and true statement of all the essential facts, I desire the said honorable board to decide who should have the money and so dispose of it. . . . I [my] offer to Mr. Duvall to take the $100 above mentioned and settle the matter was to avoid any further contention, and to be without legal prejudice. He now offers me $50 to sign a release to the $600 now in your hands. I inclose his lawyer's advice to me. . . . I feel sure that when the facts are known by you, that no better tribunal can be found to decide our relative rights than your honorable body."

The court found that the county board executed a warrant in favor of McQuiddy for $600, which was retained in its possession until ordered destroyed; that Duval purchased the land without actual knowledge of the establishment of the road; that after such purchase a controversy arose as to who was entitled to the condemnation money; that after receiving the McQuiddy letter the board heard a statement from Duval and his attorney, and after considering both, decided the award should be paid to Duval. The warrant was therefore destroyed and a new one made and delivered to him, and he received the money thereon. McQuiddy's executors appealed to this court, and it was held that he had estopped himself by his own conduct to obtain the relief sought. The order overruling the motion for judgment on the pleadings was affirmed, and the cause was remanded for further proceedings. (*Lillard v. Johnson County,* 102 Kan. 822, 172 Pac. 518.)

On being remanded the cause was tried and the court found for the defendants, and the plaintiffs again appeal.

Counsel say that the cancellation of the McQuiddy warrant and the handing of the compensation over to Duval violated section 4 of article 12 of the Kansas constitution (Gen. Stat. 1915, § 239) and the moral law of Matt. xxv, 14-30. The former prohibits the appropriation of a right of way to the use of any corporation until full compensation be first made in money or secured by deposit to the owner. It seems that the land had not been actually appropriated at the time of the trial, and then Duval was the owner, and the right to

Lillard v. Johnson County.

the condemnation money claimed by the grantor was denied by the very tribunal selected by the latter. True, it is contended that this tribunal was not vested with jurisdiction to decide the controversy, but, be that as it may, the former owner of the land asked the board to consider and determine the question, which it did. The New Testament authority cited is the parable of the talents. The servant who put the money intrusted to him on interest was commended, but the ultraconservative who digged in the earth and hid his lord's money was rebuked and his talent taken from him and given to the servant who had made his money earn the most. To him that had the land was added the condemnation money, and from him who had allowed it to be hid in the earth it was taken away. This all seems to be more nearly a compliance with the spirit of the parable than a violation thereof.

Many, if not all, of the arguments advanced by the plaintiffs' counsel are fundamentally sound, were they applicable to the facts before us. They may well urge that the warrant was the property of the plaintiffs' decedent because he never legally lost his right to it. Also, that its cancellation was without consideration, and that the board's assumption to determine the issues between Duval and McQuiddy was without jurisdiction of the subject matter.

The barricade to recovery arises from the suggestion and attempt by McQuiddy to have the board decide whether he or Duval ought to have the warrant. Although the warrant in favor of McQuiddy had been issued, it was not delivered because his grantee claimed the right to receive its proceeds. Thus, there arose a controversy between these two men which could have been settled by an ordinary lawsuit or by any other means agreed upon by them. McQuiddy's own proposition was that the board take up the matter and consider and determine which one should receive the condemnation money. He argued his side of the question. Duval seems to have had his cause presented by an attorney. After hearing both sides, the board did exactly what McQuiddy had requested it to do— decided the matter. He had not requested it to decide in his favor, and, under the circumstances, neither he nor his personal representatives can complain because such a decision was not reached.

Lillard v. Johnson County.

Estoppel arises out of the generic principle of inconsistency. The most homespun statement of it is the couplet—

"He that will not when he may, when he will he shall have nay."

As in physics a body cannot occupy two different places at one time, so in law, one cannot occupy two morally inconsistent positions regarding one matter. It is said that there are but few older principles of law that have been handed down from generation to generation from the earliest days of Roman law to the present time than that of estoppel. (1 Herman on Estoppel and Res Judicata, § 1.)

"An estoppel is when a man is concluded by his own act. An estoppel is an obstruction or bar to one's alleging or denying a fact contrary to his own previous action, allegation or denial." (Id., § 3.)

"Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title, or right, he cannot afterwards assume a position inconsistent with such act, claim, or conduct to the prejudice of another." (16 Cyc., 785.)

"Where a person with actual or constructive knowledge of the facts induces another by his words or conduct to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice." (Id. 791.)

This court said, in *Vaughn v. Hixon*, 50 Kan. 773, 32 Pac. 358:

"Where there is an attempt to apply the doctrine of estoppel, one essential in such a case is that the party in whose favor it is invoked must himself act in good faith." (Syl. ¶ 3.)

The county would be, indeed, unfortunate should it be required to make good this loss suffered by the plaintiffs' decedent.

McQuiddy's proposal to leave the matter to the board evinced a willingness to settle amicably a controversy, or possibly an overconfidence in the justice of his desire to receive the money. At any rate, he tried what seemed a practical short cut to reach a decision, but tried it in such a way that his executors must abide the result.

The judgment is affirmed.